UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

CHRISTOPHER D.,

                                    Plaintiff,                    **DECISION**
                                                                  **and**
                        v.                                        **ORDER**

MARTIN O'MALLEY,[1] Commissioner of                              **21-CV-6514F**
  Social Security,                                                **(consent)**

                                    Defendant.
_____

APPEARANCES:          HILLER COMERFORD INJURY & DISABILITY LAW PLLC
                      Attorneys for Plaintiff
                      IDA M. COMERFORD,
                      KENNETH R. HILLER, and
                      MARY ELLEN GILL, of Counsel
                      6000 North Bailey Avenue
                      Suite 1A
                      Amherst, New York  14226

                      TRINI E. ROSS
                      UNITED STATES ATTORNEY
                      Attorney for Defendant
                      Federal Centre
                      138 Delaware Avenue
                      Buffalo, New York  14202
                              and
                      KATHRYN L. SMITH
                      Assistant United States Attorney, of Counsel
                      100 State Street
                      Rochester, New York  14614
                              and
                      SIXTINA FERNANDEZ
                      Special Assistant United States Attorney, of Counsel
                      Social Security Administration
                      Office of General Counsel
                      6401 Security Boulevard
                      Baltimore, Maryland  21235

_____

[1] Martin O'Malley became the Acting Commissioner of the Social Security Administration on December 20, 2023, and, pursuant to Fed.R.Civ.P. 25(d), is substituted as Defendant in this case.  No further action is required to continue this suit by reason of sentence one of 42 U.S.C. § 405(g).

## JURISDICTION

On April 11, 2024, the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed before the undersigned in accordance with this court's June 29, 2018 Standing Order.  The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on June 26, 2022 (Dkt. 9), and by Defendant on November 23, 2022 (Dkt. 10).

## BACKGROUND

Plaintiff Christopher D. ("Plaintiff"), brings this action under Titles II and XVI of the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's applications ("applications") filed with the Social Security Administration ("SSA") on September 25, 2019, for Social Security Disability Income ("SSDI") under Title II of the Act, and on January 13, 2020, for Supplemental Security Income ("SSI") under Title XVI of the Act (together, "disability benefits").  Plaintiff alleges he became disabled on May 12, 2019,[2] based on Type 2 diabetes, back pain, foot pain, depression with anxiety, restless leg syndrome, and PVC (premature ventricular contractions – extra, abnormal heartbeats). AR[3] at 497, 540, 545.  Plaintiff's application initially was denied on September 27, 2019.

---

[2] In his SSI application, Plaintiff alleges he became disabled on January 8, 2019.  AR at 501, 511.  The parties do not address the discrepancy in the disability onset dates which is neither acknowledged nor explained in the record.

[3] References to "AR" are to the Bates-numbered pages of the Administrative Record electronically filed by Defendant on January 27, 2022 (Dkt. 7).

AR at 142-47.  Plaintiff's claims initially were denied on December 26, 2019 (SSDI), AR at 327-39, and on January 14, 2020 (SSI).[4]  AR at 354.

Plaintiff timely filed a request for reconsideration, AR at 76-78, which was denied on January 21, 2020.  AR at 402-25.  On February 5, 2020, Plaintiff requested an administrative hearing, AR at 426-37, which was granted with the administrative hearing held by telephone conference on December 3, 2020, before Administrative Law Judge ("ALJ") Brian Kane ("the ALJ"), located in Rochester, New York ("the administrative hearing").  AR at 196-256. Appearing and testifying by telephone at the hearing were Plaintiff, represented by legal counsel Jeffrey Valentine, Esq., along with an impartial vocational expert ("VE") Dennis King ("the VE").

On January 12, 2021, the ALJ issued a decision denying Plaintiff's claim, AR at 15-43 ("ALJ's Decision"), which Plaintiff timely appealed to the Appeals Council ("administrative appeal").  AR at 494-96.  On June 21, 2021, the Appeals Council denied Plaintiff's request for review, AR at 1-7, rendering the ALJ's Decision the Commissioner's final decision on Plaintiff's disability benefits applications.  In connection with Plaintiff's administrative appeal, Plaintiff submitted to the Appeals Council new medical evidence which the Appeals Counsel did not consider as it did not show a reasonable probability that it would change the outcome of the ALJ's Decision. AR at 2, 13-14, 44-195, 257-326.  On August 3, 2021, Plaintiff commenced the instant action seeking review of the ALJ's Decision denying Plaintiff disability benefits.

On June 26, 2022, Plaintiff moved for judgment on the pleadings (Dkt. 9 ("Plaintiff's Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion

---

[4] Plaintiff's SSI application was filed on an expedited basis so that it could be joined with Plaintiff's SSDI application at the reconsideration level.  *See* AR at 509.

for Judgment on the Pleadings (Dkt. 9-1) ("Plaintiff's Memorandum").  On November 23,

2022, Defendant moved for judgment on the pleadings (Dkt. 10) ("Defendant's Motion"),

attaching the Commissioner's Brief in Support of the Commissioner's Motion for

Judgment on the Pleadings and in Response to Plaintiff's Brief Pursuant to Local Rule

5.5 (Dkt. 10-1) ("Defendant's Memorandum").  On January 4, 2023, Plaintiff filed

Plaintiff's Reply to Commissioner's Memorandum in Support (Dkt. 12), advising that

upon reviewing Defendant's Memorandum, "Plaintiff deems no reply necessary because

any reply would simply duplicate arguments made in the original brief . . . ."  Oral

argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is

GRANTED.

## FACTS[5]

Plaintiff Christopher D. ("Plaintiff"), born January 4, 1966, was 53 years old as of

his alleged disability onset date ("DOD") of May 12, 2019, and 55 years old as of

January 12, 2021, the date of the ALJ's Decision.  AR at 38, 497, 500, 540, 545.  As of

the administrative hearing, Plaintiff lived in an apartment with a friend ("roommate") who

is a disabled veteran who had a stroke and cancer.  AR at 200, 206, 563.  Plaintiff helps

his roommate, who has limited mobility and speech, with laundry, errands such as

grocery shopping, preparing meals, making appointments, and some personal care and

grooming such as clipping his roommate's hair and fingernails.  AR at 207-09.  Plaintiff

has an adult daughter and two grandchildren, ages 1 and 3, who Plaintiff often babysits.

---

[5] In the interest of judicial economy, recitation of the Facts is limited to only those necessary for
determining the pending motions for judgment on the pleadings.

AR at 214-17, 224, 236-37.  Plaintiff was in regular classes in school, graduated high school, but did not serve in the military, and has not completed any specialized training, trade, or vocational school.  AR at 546.

Plaintiff's driver's license was suspended for unpaid fines, so plaintiff relies on medical transports, public transportation or bikes or walks.  AR at 210-11, 229-32, 236. For longer distances, Plaintiff sometimes takes his bicycle with him on the bus which he rides as close as possible to his destination, then finishes his trip by bicycle.  AR at 232-33.  On February 3, 2019, Plaintiff sought treatment at WellNOW Urgent Care ("WellNOW") in Fairport, New York, after Plaintiff fell on ice,[6] injuring his left hip and fracturing a left rib.  AR at 683, 754-57.  X-rays taken at WellNOW of Plaintiff's left hip, left ribs, and pelvis revealed a possible non-displaced fracture of the anterior left ninth rib.  AR at 757, 766-67.  On February 17, 2019, Plaintiff returned to WellNOW, reporting improvement of his left rib but complaining his left hip had worsened and was then bruised.  *Id*. at 758.

Most of Plaintiff's past relevant work ("PRW") was restaurant work including as a dishwasher and in food prep, AR at 211-12, and as a deli clerk and in the meat department of various grocery stores, AR at 212-13, as well as a photo counter clerk. AR at 212.  Plaintiff maintains he was terminated from his previous employment because he took too many breaks which Plaintiff attributes to his physical impairments. AR at 233-34.  Plaintiff's most recent job was as a dishwasher at a restaurant which he lost when the restaurant closed.  AR at 209-10.

---

[6] Despite reports in the record that Plaintiff's fall occurred while Plaintiff was riding his bicycle on ice, *see*, *e.g.*, AR at 683 (reporting Plaintiff went to urgent care "for falling off bike on ice"), at the administrative hearing, Plaintiff denied riding his bicycle on the ice.  AR at 229.

It is undisputed Plaintiff suffers from multiple physical impairments including degenerative disc disease of the lumbar spine, degenerative joint disease of both hips, his right knee, left foot, and left ankle, diabetes, and obesity.  Plaintiff obtained primary care at Manhattan Square Family Medicine where his primary care physician ("PCP") was Stephen Lurie, M.D. ("Dr. Lurie"), and also saw Natercia Reis Rodrigues, M.D. ("Dr. Rodrigues").  AR at 631-709, 843-51, 1223-47.  Plaintiff also sought treatment for his various orthopedic complaints at University of Rochester Orthopedics, where he saw Jennifer Paul, M.D. ("Dr. Paul"), and Rajeev K. Patel, M.D. ("Dr. Patel").  AR at 852-1222.  For his mental impairments, Plaintiff was treated at Rochester Regional Health where he saw Scott Gaskill, LCSW ("Counselor Gaskill"), and John Brewer, LMHC ("Counselor Brewer").  AR at 710-22, 788-830, 1248-1374.

 In connection with his disability benefits application, on December 5, 2019, Plaintiff underwent a psychiatric evaluation by consultative psychologist Christine Ransom, Ph.D. ("Dr. Ransom").  AR at 732-35.  Dr. Ransom assessed Plaintiff with no evidence of limitations with regard to understanding, remembering, and applying simple and complex directions and instructions, using reasoning and judgment to make work-related decisions, interacting adequately with supervisors, coworkers and the public, sustaining concentration to perform a task at a consistent pace, sustaining an ordinary routine and regular attendance at work, regulating emotions, controlling behavior, maintaining well-being, maintaining personal hygiene and appropriate attire and being aware of normal hazards and take precautions.  AR at 734-35.  Dr. Ransom concluded Plaintiff has "no psychiatric condition," and recommended Plaintiff seek psychiatric treatment and mental health counseling if his self-reported stress continues or becomes

unmanageable, and reported Plaintiff's prognosis as fair to good either with or without treatment.  *Id.* at 735.

Also on December 5, 2019, Plaintiff underwent an internal medicine examination by consultative physician Harbindoor Toor, M.D. ("Dr. Toor").  AR at 737-740.  Dr. Toor reported Plaintiff's chief complaints included degenerative arthritis in multiple sites including the lower back, hips, right knee, and left ankle for 10 years, producing constant, sharp pain ranging from 7 to 8 on a scale of 10, stiffness, and swelling, rendering it difficult for Plaintiff to attend to his regular physical routine including standing, walking, squatting, sitting, bending, and lifting, and caused Plaintiff to lose his balance.  *Id.* at 737.  Plaintiff's history also included diabetes since 2019, hypertension for 10 years, and Plaintiff used braces for his back, right knee, and left ankle.  *Id.* at 737-38.  Upon examination, Plaintiff appeared to be in no acute distress, wore braces prescribed by his physician on his back, right knee, left ankle, and left foot, Plaintiff's gait was abnormal with Plaintiff limping to the left, Plaintiff declined to walk on heels and toes, squat was to 20% of normal, and it was difficult for Plaintiff to get on and off the exam table and to rise from a chair, but stance was normal, Plaintiff used no assistive device, and needed no help changing for examination.  *Id.* at 738.  Examination of Plaintiff's musculoskeletal system showed normal cervical and thoracic spine, but reduced range of motion ("ROM"), of Plaintiff's lumbar spine, straight leg raising test was negative bilaterally in both the sitting and supine positions, and Plaintiff's upper extremities had full ROM.  *Id.* at 739.  With regard to Plaintiff's lower extremities, Plaintiff had decreased ROM in his right knee with tenderness and stiffness, left knee was normal, left ankle plantar flexion and dorsiflexion were decreased, left ankle was tender,

stiff, and swollen.  *Id*.  Plaintiff has no evident subluxations, contractures, ankylosis, or thickening, and joints were stable, without redness, heat, or effusion.  *Id*.  Dr. Toor diagnosed a history of degenerative arthritis of multiple joints, low back pain, right knee arthritis, left ankle and left foot pain, rib cage injury, diabetes, and hypertension.  *Id*. at 740.  Dr. Toor assessed Plaintiff's prognosis as guarded, finding Plaintiff with moderate to marked limitations to standing, walking, squatting, lifting and carrying, stating Plaintiff's pain interfered with his balance, and that Plaintiff had a moderate limitation to sitting for a long time.  *Id*.

Plaintiff's medical records were reviewed on December 13, 2019, by State Agency review psychologist K. Lieber-Diaz, Psy.D. ("Dr. Lieber-Diaz"), and on December 17, 2019, by State agency review physician S. Stradley, D.O. ("Dr. Stradley").  AR at 327-38.  Dr. Lieber-Diaz opined Plaintiff has a medically determinable mental impairment of depression, bipolar, or a related disorder and assessed Plaintiff with mild restrictions in the domains of understanding, remembering and applying information, interacting with others, as well as concentration, persistence, and maintaining pace, but no restriction in adapting or managing himself, and Plaintiff's assessed restrictions did not satisfy the SSA's applicable regulations for disability based on his mental impairment.  AR at 332.  Dr. Stradley considered Plaintiff's complaints as indicative of dysfunction of major joints, but ultimately did not diagnose Plaintiff with any physical disorder.  AR at 333-36.  Based on Plaintiff's medical records and diagnostic testing, Dr. Stradley assessed Plaintiff with non-severe degenerative disc and joint disease, which Dr. Stradley opined would not preclude Plaintiff from performing light work.  *Id*.

On August 28, 2020, at the request of Plaintiff's attorney, Dr. Lurie completed a Physical Treating Medical Source Statement ("opinion form") regarding Plaintiff's physical conditions and limitations.  AR at 844-51 ("Dr. Lurie's opinion").  Dr. Lurie reported seeing Plaintiff every three to six months for diabetes and anxiety for which Plaintiff's prognosis was "poor."  AR at 845.  As the designated places on the opinion form, Dr. Lurie described Plaintiff's symptoms as "multiple," characterized Plaintiff's nature, location, frequency, precipitating factors, and severity of Plaintiff's pain as "variable," and identified Plaintiff's clinical findings and objective signs as "numerous," and left blank the area of the opinion form calling for Dr. Lurie to describe Plaintiff's treatment and any side effects to such treatment.  *Id*.  Psychological factors affecting Plaintiff's physical condition included depression and anxiety, and Plaintiff would "constantly" experience pain and other symptoms severe enough to interfere with his attention and concentration for even simple tasks such that Plaintiff was incapable of performing even "low stress" jobs.  *Id*. at 846.  Dr. Lurie estimated Plaintiff could walk one block without rest or severe pain, did not indicate for how long Plaintiff could sit, stand or walk, instead writing "unknown – please ask him."  *Id*. at 846-47.  According to Dr. Lurie, Plaintiff needed a cane to stand and walk, was incapable of lifting or carrying any weight, looking down, turning his head right or left, looking up, or holding his head in a static position, and could never twist, stoop (bend), crouch/squat, climb ladders, or climb stairs, and was likely to miss more than four days of work per month.  *Id*. at 847-48.  Dr. Lurie concluded that his stated limitations were consistent with the objective medical evidence in Plaintiff's record including the results of physical examinations and treatments.  *Id*. at 849.

**<u>DISCUSSION</u>**

**1.      Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A).  A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error.  42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003).  In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted).  "Substantial evidence is more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id*.  It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence.  *Id*.  "Congress has instructed . . . that the factual findings of the Secretary,[7] if supported by substantial

---

[7] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.

evidence, shall be conclusive."  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

In short, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  "Under this 'very deferential standard of review,' 'once an ALJ finds facts, we can reject those facts only if a reasonable factfinder would *have to conclude otherwise*.'"  *Id*. at 58-59 (quoting *Brault v. Social Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (italics in original).

## 2.    Disability Determination

The definition of "disabled" is the same for purposes of receiving SSDI and SSI benefits.[8]  *Compare* 42 U.S.C. § 423(d) *with* 42 U.S.C. § 1382c(a).  The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.  *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982).  The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations.  20 C.F.R. §§ 404.1520(c) and

---

[8] Although the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title II, 42 U.S.C. § 423(d), and Title XVI, 42 U.S.C. § 1382c(a)(3), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

416.920(c).  Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement of at least 12 continuous months, there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless of age, education, or work experience.  42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d).  As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's residual functional capacity ("RFC") which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. §§ 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW").  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the applicant remains capable of performing PRW, disability benefits will be denied, *id*., but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c).  The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).  All five steps need not be addressed because if the claimant fails to meet the criteria at either of the first two steps, the inquiry ceases and the claimant is not eligible for disability benefits, but if

the claimant meets the criteria for the third or fourth step, the inquiry ceases with the claimant eligible for disability benefits.  20 C.F.R. §§ 404.1520 and 416.920.

### 3.    Analysis of Plaintiff's Arguments

In the instant case, the ALJ found Plaintiff meets the Act's insured status requirement for SSDI through September 30, 2024, and has not engaged in substantial gainful activity ("SGA") since May 12, 2019, Plaintiff's asserted disability onset date ("DOD").  AR at 20.  The ALJ found Plaintiff suffers from the severe impairments of degenerative disc disease of the lumbar spine, degenerative joint disease of the bilateral hips, right knee, left foot, and left ankle, diabetes, and obesity, *id*. at 20-21, but that Plaintiff's rib fracture, tinnitus, and onchomycosis (fungal nail infection), as well as Plaintiff's medically determinable mental impairments of dysthymia, depression and anxiety, do not pose more than a minimal effect on Plaintiff's ability to perform physical or work activities and, as such, are not severe impairments, *id*. at 21, and that Plaintiff does not have an impairment or combination of impairments meeting or medically equal to the severity of any listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. at 21-23.  The ALJ did not find Dr. Lurie's opinion persuasive, AR at 24, and despite Plaintiff's impairments, the ALJ found Plaintiff retains the RFC to perform a full range of light work as defined by 20 C.F.R. § 416.967(b).  *Id*. at 23-36.  The ALJ further found Plaintiff is capable of performing his PRW as a deli clerk and photo counter clerk, *id*. at 36-38.  Accordingly, the ALJ found Plaintiff was not disabled as defined in the Act from May 12, 2019, the asserted DOD, through the date of the ALJ's Decision.  *Id*. at 38.

In support of his motion, Plaintiff argues the Appeals Council erred in rejecting
Plaintiff's newly submitted treating medical opinion evidence because such evidence
showed no reasonable probability of altering the outcome of the ALJ's Decision,
Plaintiff's Memorandum at 9-12, and the ALJ relied on his lay judgment in failing to
consider the consistency between the examining and treating opinion evidence and
rejecting such opinion evidence.  *Id*. at 12-14.  Defendant argues Plaintiff has not met
his burden of demonstrating that Plaintiff's RFC is more restrictive than the ALJ's
Decision that Plaintiff has the RFC for light work, a finding that is supported by
substantial evidence, Defendant's Memorandum at 8-13, the ALJ's Decision establishes
the ALJ analyzed the opinion evidence in the record according to the applicable
regulations, *id*. at 13-17, and the new evidence submitted to the Appeals Council
provided no basis for changing the ALJ's Decision.  *Id*. at 17-21.  There is no merit to
Plaintiff's arguments.

Initially, the court addresses Plaintiff's argument that the ALJ improperly
substituted his own lay judgment for the opinions of Plaintiff's treating sources in
determining Plaintiff, despite his physical impairments, retains the RFC for the full range
of light work.[9]  Plaintiff maintains that the ALJ, in rejecting the opinions of both the
consultative examiner Dr. Toor, as well as Plaintiff's treating physician Dr. Lurie, the two
opinions being consistent with each other, the ALJ, in violation of the relevant
regulations, relied on his own lay judgment in determining Plaintiff retained the RFC for

---

[9] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects
weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it
requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing
and pulling of arm or leg controls."  20 C.F.R. § 404.1567(b).

a full range of light work.  Plaintiff's Memorandum at 12-14 (citing 20 C.F.R. §§

404.1520c, 416.920c.  In opposition, Defendant argues the ALJ properly applied the

relevant regulations in evaluating the opinions of Dr. Toor and Dr. Lurie, but that other

evidence in the record, including Plaintiff's administrative hearing testimony, activities of

daily living, and the longitudinal, *i.e.*, developed over a long period of time, evidence of

record showing "virtually no treatment for musculoskeletal symptomatology during the

period at issue, aside from medication," supported the ALJ's determination that such

opinions were not persuasive.  Defendant's Memorandum at 13-17.

The ALJ's determination that Plaintiff could perform work requiring light exertion,

*i.e.*, requiring lifting and carrying up to 20 lbs., a "good deal" of standing or walking, and

some pushing and pulling of arm or leg controls, 20 C.F.R. § 404.1567(b), is at odds

with the opinions of both Dr. Toor and Dr. Lurie.  Specifically, Dr. Toor's opinion

indicated that Plaintiff had moderate to marked limitations to standing, walking,

squatting, lifting, carrying, and sitting a long time, and that pain interfered with Plaintiff's

balance.  AR at 740.  Dr. Lurie did not indicate how long Plaintiff could stand, walk or sit,

but opined Plaintiff was unable to lift or carry any weight, could not turn his head or

neck, and was unable to twist, stoop, crouch/squat, climb ladders, or climb stairs.  AR at

847-48.

Insofar as Plaintiff challenges the weight the ALJ gave to the various medical

opinions in formulating Plaintiff's RFC, for claims filed on or after March 27, 2017, the

relevant regulations provide that

> We will not defer or give any specific evidentiary weight, including controlling
> weight, to any medical opinion(s) or prior administrative medical finding(s),[10]

---

[10] "A prior administrative medical finding is a finding, other than the ultimate determination about whether
you are disabled, about a medical issue made by our Federal and State agency medical and

including those from your medical sources. When a medical source provides one or more medical opinions or prior administrative medical findings, we will consider those medical opinions or prior administrative medical findings from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate....

20 C.F.R. § 404.1520c(a).

In particular, when more than one medical opinion are provided by medical sources, the Commissioner will consider the medical opinions together according to five factors including (1) supportability; (2) consistency; (3) the medical's source's relationship with the claimant; (4) specialization; and (5) any other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c). When evaluating the persuasiveness of a medical opinion, the two most important factors are supportability and consistency, 20 C.F.R. § 404.1520c(a), and the ALJ must articulate he or she considered the "supportability" and "consistency" of a medical source's opinion, 20 C.F.R. § 404.1520c(b)(2), but is not required to articulate consideration of the remaining factors.[11]  *Id.*  In the instant case, there is no merit to Plaintiff's argument that the ALJ erred in failing to consider the supportability and consistency of Dr. Toor's and Dr. Lurie's medical opinions.

As the ALJ observed, Dr. Toor opined, based on a single consultative physical examination of Plaintiff, that Plaintiff has moderate to marked limitations to standing,

---

psychological consultants at a prior level of review ... in your current claim based on their review of the evidence in your case ...." 20 C.F.R. § 404.1513(a)(5). In the instant case, no prior administrative medical finding is at issue.

[11] In the interest of completeness, the court notes that where the ALJ fails to articulate the supportability and consistency factors with regard to opinions found persuasive, such error is harmless where the record establishes application of the correct legal standard would not have changed the outcome of the disability determination. *See Scott A. v. Comm'r of Soc. Sec.*, 2022 WL 3141707, at * 5-6 (N.D.N.Y. May 3, 2022) (applying harmless error standard where the ALJ failed to articulate the supportability and consistency factors in assessing the persuasiveness of a physician's opinion where application of the correct legal standard, including the supportability and consistency factors, would not have resulted in a different conclusion).

walking, squatting, lifting, and carrying, that pain interferes with Plaintiff's balance, and Plaintiff has a moderate limitation to sitting for a long time.  AR at 740.  The ALJ found Dr. Toor's opinion, although based on a "detailed examination," was "not consistent with the longitudinal evidence of record that reflects virtually no treatment for musculo-skeletal symptomatology" except for some medication, and is also inconsistent with Plaintiff's activities of daily living.  AR at 33.  With regard to Dr. Lurie's opinion, the ALJ observed that Dr. Lurie declined to provide any estimate as to how long Plaintiff could sit or stand, instead commenting "unknown – please ask him," AR at 845-46, yet also opined Plaintiff required a job that permitted him to shift positions at will from sitting, standing, or walking, *id*. at 847, that Plaintiff could never lift or carry any weight, *id*., could never look down, turn his head right or left, look up, hold his head in a static position, twist, stoop (bend), crouch/squat, climb ladders, or climb stairs, *id*. at 848, and Plaintiff would be absent more than four times a month.  AR at 849.  The ALJ contrasted Dr. Lurie's opinion with the fact that Dr. Lurie treats Plaintiff for diabetes[12] and anxiety, described Plaintiff's symptoms as "multiple," and Plaintiff's findings and objective signs as "numerous."  AR at 34 (citing AR at 845).  The ALJ's determination that neither Dr. Toor's opinion nor Dr. Lurie's opinion is supported by and consistent with Plaintiff's longitudinal treatment records is supported by substantial evidence in the record.

Specifically, as the ALJ observed, AR at 24-27, despite complaining for several years of pain in his right hip, low back, left ankle, and right knee, imaging diagnostic tests, including a September 24, 2012 X-ray of Plaintiff's right hip, AR at 639, 868, September 24, 2012 X-ray of Plaintiff's lumbar spine, *id*., February 2013 MRI of

---

[12] According to the ALJ, the record indicates that Plaintiff's diabetes symptoms were "markedly improved" with medication, AR at 32, and Plaintiff does not argue otherwise.

Plaintiff's lumbar spine, *id.*, and December 28, 2012 X-rays of Plaintiff's left foot and ankle, AR at 910-11, repeatedly showed only mild to moderate degenerative changes. Upon presenting to WellNOW on February 3, 2019 after falling on the ice, X-rays of Plaintiff's left hip showed no bony abnormalities but joint changes, and X-rays of Plaintiff's pelvis showed no acute bony abnormalities but degenerative joint changes in both hips, more pronounced on the right.  AR at 766-67.  Not only did diagnostic imaging fail to show more significant degenerative changes, AR at 25, but the record demonstrates that Plaintiff's treatment for the chronic pain attributed to these impairments was limited to pain medication, with no other treatment for Plaintiff's musculoskeletal symptomatology.  AR at 33.  Plaintiff does not argue otherwise.

The ALJ also properly considered Plaintiff's self-reported activities of daily living as indicative of Plaintiff's ability to engage in light work.  *See* AR at 31-33.  Specifically, the ALJ considered that Plaintiff is independent with regard to his own activities of daily living, and that he also assists his roommate, a disabled veteran, with the roommate's activities of daily living, as well as babysit Plaintiff's young grandchildren, ages 1 and 3, which required Plaintiff to bend and lift the children.  AR at 33 (citing Hearing Testimony).  The ALJ noted that during the administrative hearing, Plaintiff briefly paused the hearing to assist his mobility-impaired roommate, who was in the house during the video conferenced administrative hearing, to the door to catch a ride to a medical appointment.  AR at 24 (citing AR at 200, 224-25).  Plaintiff's other activities of daily living included dressing, grooming, bathing, cooking and preparing food, cleaning, doing laundry, managing money, and shopping.  AR at 32.  Plaintiff enjoyed watching television, listening to the radio, and participating in social media.  *Id*.  The ALJ properly

found these activities consistent with the performance of light work.  *See Christopher P. v. Comm'r of Soc. Sec*., 2024 WL 3029432, at * 4 (W.D.N.Y. June 17, 2024) (considering the plaintiff's activities of daily living, which included caring for children ages 8, 6 and 6, including meal preparation, getting transportation, paying bills, managing money, doing laundry, cleaning his home, caring for his hygiene, and socializing with friends, consistent with performing light work).

Moreover, the ALJ references numerous treatment records of Plaintiff asserting he wanted to work, but was hesitant to pursue employment because it would jeopardize Plaintiff's chances of obtaining disability benefits.  *See*, *e.g.*, AR at 30-31 (citing AR at 1313 (Counselor Brewer reporting on April 6, 2020 that "Chris appears very stuck in whether he should go back to work because he is worried that it will jeopardize his chances for Social Security disability"); AR at 1307 (Counselor Brewer reporting on May 19, 2020 that Plaintiff "was frustrated because he wants to work but on the other hand he is worried about that because [if he works] he will lose his Social Security disability claim again"); AR at 1291 (Nurse Practitioner Mia Gesel reporting on June 8, 2020, that Plaintiff "[k]eeps getting denied for disability and his lawyer tells him not to go back to work because it will interfere with his case"); and 1269 (Counselor Brewer reporting on August 7, 2020 that "Chris shared that he does not want to work because it could jeopardize his Social Security hearing/decision.  He shared that if he could get a job under the table doing physical labor he would do so.")).  Plaintiff's repeated statements that he did not pursue obtaining employment, but would accept employment "under the table" so as not to jeopardize his claim for disability benefits strongly supports the ALJ's determination that Plaintiff could engage in SGA.  *See Lovell v. Colvin*, 137 F.Supp.3d

347, 354 (W.D.N.Y. 2015) (no remand necessary where ALJ rejects Plaintiff's subjective complaints based on Plaintiff's own expressed desire to work such that the ALJ did not abuse his discretion in determining the plaintiff's testimony was not entirely credible).

Accordingly, the ALJ did not improperly rely on his own lay opinion in declining to adopt the opinions of Dr. Toor and Dr. Lurie that Plaintiff is not capable of performing light work as defined in the Act.

As regards Plaintiff's argument that the Appeals Council erred in rejecting Plaintiff's new evidence submitted to the Appeals Council because the evidence showed no reasonable probability of altering the outcome of the ALJ's Decision, Plaintiff's Memorandum at 9-12, the relevant regulations do not require the Appeals Council provide a detailed explanation for declining to review an ALJ's decision.  *See Amber F. v. Comm'r of Soc. Sec.*, 2024 WL 4026194, at * 6 (W.D.N.Y. Sept. 3, 2024) (citing cases including, *inter alia*, *Johnmark C. v. Comm'r of Soc. Sec.*, 2023 WL 6977430, at * 12 (W.D.N.Y. Oct. 23, 2023) ("[T]he regulations do not require the Appeals Council to provide an elaborate explanation when it evaluates additional evidence presented, citing 20 C.F.R. § 404.967 (only requires Appeals Council to notify the party of its action), and § 404.970 (does not mention any information that must be in the denial notice))).  "Furthermore, the Second Circuit has specifically acknowledged that the Appeals Council's denial of review does not amount to consideration on the merits but rather, is analogous to denial of *certiorari*."  *Johnmark C.*, 2023 WL 6977430, at * 12 (citing *See Pollard v. Halter*, 377 F.3d 183, 192 (2d Cir. 2004)).   Thus, the Appeals Council was not required to specify why it found the additional evidence did not warrant further review of the ALJ's decision, as Plaintiff suggests.  *Id*.  Nevertheless,

"the new evidence submitted to the Appeals Council after the ALJ's decision is part of the administrative record for judicial review when the Appeals Council denies review of the ALJ's decision."  *Id*. (citing *Perez v. Chater*, 77 F.3d 41, 4 (2d Cir. 1996)). Accordingly, the court addresses Plaintiff's new medical opinion evidence submitted to the Appeals Council.

The new medical opinion evidence referenced by Plaintiff is from Monroe County Department of Social Services ("DSS") where Plaintiff obtained treatment for both his mental and physical impairments for the period April 7, 2016 to November 20, 2020, and includes the October 4, 2019 opinion of psychologist Stephen Farmer, Psy.D. ("Dr. Farmer"), AR at 306-13, the December 5, 2019 opinion of Plaintiff's treating therapist Counselor Gaskill, AR at 303-04, the January 13, 2020 opinion of physician Raquel Benchoam-Ravid, M.D. ("Dr. Benchoam-Ravid"), AR at 292-96, the January 17, 2020 opinion of Tammy Piotter, LMHC ("Counselor Piotter"), AR at 297-301, the July 15, 2020 opinion of Dr. Rodrigues (AR at 287-90), the July 17, 2020 opinion of Kelly Collins, LMHC ("Counselor Collins"), AR at 266-69, and the November 20, 2020 opinion of Caley Fain, LMHC ("Counselor Fain"), AR at 261-64.  Significantly, with regard to Plaintiff's mental health impairment, Dr. Farmer, Counselor Collins, Counselor Fain, and Counselor Piotter, each opined that Plaintiff's mental health impairment was not expected to limit Plaintiff's ability to work for more than three to six months.  *See* AR at 264 (Counselor Fain – three months); 268 (Counselor Collins – three months); 300 (Counselor Piotter – three months), and 312 (Dr. Farmer – six months).  Accordingly, the opinions of none of these treatment providers found Plaintiff's disability would continue for the statutory minimum required 12 months for disability benefits.  42 U.S.C.

§ 423(d)(1)(A) (defining "disability" as an inability to engage in SGA because of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or is expected to last for a continuous period of not less than 12 months); § 1382a(c)(3)(A) (same).  Insofar as Counselor Gaskill opined Plaintiff could work "20 hours a week to start," AR at 303, the ability to engage in part-time work does not support a finding of disability.  *See* 20 C.F.R. §§ 404.1572(a), 416.972(a) ("Your work may be substantial even if it is done on a part-time basis. . . .").  *See also* *Silva v. Saul*, 2019 WL 2569595, at *5 (W.D.N.Y. June 21, 2019) (collecting cases) (explaining that an "ALJ may also properly consider a claimant's demonstrated ability to work part-time during the relevant period as evidence that the claimant is not completely disabled").

In their respective opinions, both Dr. Benchoam-Ravid and Dr. Rodrigues found Plaintiff is "very limited" in his ability stand, walk, lift or carry, and climb stairs, AR at 290, 294, while Dr. Rodrigues also found Plaintiff "very limited" in his ability to sit, push, pull, bend, see, hear, and speak.  *Id*. at 290.  Not only did Dr. Benchoam-Ravid opine Plaintiff's limitations were expected to last only three months, AR at 294, which does not meet the required 12-months durational requirement, but as discussed above in connection with Dr. Lurie's similar findings in his opinion, *see* Discussion, *supra*, at 17-19, such findings are inconsistent with the medical record which shows largely conservative treatment for Plaintiff's physical impairments for which physical examinations of Plaintiff revealed few abnormal findings.  *See* Discussion, *supra*, at 17-18.  Furthermore, such findings are inconsistent with Plaintiff's activities of daily living including that he babysat his young grandchildren, ages 1 and 3, AR at 33, used public

transportation and rode his bicycle, AR at 1262, 1269, and assisted his disabled roommate with various activities of daily living including laundry, preparing meals, making appointments, and some personal grooming, AR at 200, 224-25.  Moreover, the findings of Dr. Benchoam-Ravid and Dr. Rodrigues are inconsistent with Plaintiff's repeated statements that he would perform a job doing physical labor if he could find one "under-the-table."  *Id*. at 31, 109, 112, 124.  Accordingly, the court's consideration of the new evidence Plaintiff submitted to the Appeals Council provides no basis for changing the ALJ's Decision.

In sum, the issue is not whether substantial evidence supports the claimant's argument, but "whether substantial evidence supports *the ALJ's decision*."  *Bonet ex rel. T.B. v. Colvin*, 523 Fed.Appx. 58, 59 (2d Cir. 2013) (italics in original).  Here, under the court's "very deferential standard of review," *Brault*, 683 F.3d at 448, the plethora of evidence in the administrative record cited by the ALJ, including treatment notes and diagnostic test results, establishes "that no reasonable factfinder could [not] have reached the same conclusion," *i.e.*, that the ALJ's RFC assessment that Plaintiff, despite his impairments, remained capable of performing a full range of light work.  *Schillo*, 31 F.4th at 78.  The ALJ's Decision is thus supported by substantial evidence in the record, requiring Plaintiff's Motion be DENIED and Defendant's Motion be GRANTED.

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. 9) is DENIED; Defendant's Motion

(Dkt. 10) is GRANTED; the Clerk of Court is DIRECTED to CLOSE the file.

SO ORDERED.


/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:     September 10, 2024
                 Buffalo, New York